1   NAN ZHONG (Plaintiff *pro se*)
2   211 Hope St. #390755
3   Mountain View, CA 94039
4   Telephone: 425-698-9139
5   nanzhong1@gmail.com
6

**FILED**

SEP 1 7 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

7                   UNITED STATES DISTRICT COURT

8           FOR THE EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| **Stanley Zhong, et al.** | |
| Plaintiffs, | Case No. 2:25-cv-00495-DAD-CSK |
| v. | |
| **The Regents of the University of California, et al.** | Date: October 7, 2025<br>Time: 10:00 am<br>Place: Courtroom 25<br>Judge: Hon. Chi Soo Kim |
| Defendants. | |

10      **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

11  **INTRODUCTION**

12  The University of California ("UC") asks this Court to deny Plaintiffs' Motion for

13  Sanctions (Dkt. 39) as "premature" and "irrelevant." That framing ignores the core fact

14  that UC erased the contents of Professor Perry Link's desktop computer **while this**

15  **litigation was pending and after litigation holds were in place.** UC's own

16  department chair admitted in June 2025 that the computer had been "retrieved" and its

17  memory "deleted." (Exhibit 1 at 5). Yet UC's counsel, as recently as August 26, 2025,

1 insisted that the computer "was never removed" and "no data were deleted." (Exhibit 2

2 at 7 line 12 and 18).

3 Plaintiffs have now submitted sworn testimony, contemporaneous emails, and UC's own

4 records demonstrating that the computer was erased and that irreplaceable data were

5 lost. (Exhibit 1). This entrenched factual conflict requires the Court's intervention to

6 prevent further prejudice and deter ongoing misconduct.

## 7 I. UC HAD CLEAR NOTICE OF PRESERVATION DUTIES

8 UC knew from the outset that Professor Link was a relevant witness. Plaintiffs identified

9 him in their initial Complaint and every amendment as prepared to testify about UC's

10 use of race. Plaintiffs also issued a litigation hold notice covering admissions and

11 incidents involving race. Erasing the hard disk anyway — and then denying any deletion

12 occurred — was a direct violation of those obligations.

13 UC never objected to the scope of that hold until after it faced Motion for Sanctions.

14 That timing shows its arguments are not genuine but litigation tactics.

15 UC's own Office of General Counsel later issued a litigation hold notice directly to

16 Professor Link, confirming that UC itself recognized his materials as covered.

## 17 II. SANCTIONS ARE NOT "PREMATURE"

18 UC argues sanctions are premature because no Rule 26(f) conference has occurred

19 and discovery has not begun. That is wrong. Spoliation does not wait for discovery. The

20 duty to preserve evidence attaches when litigation is reasonably anticipated, not when

1 discovery begins. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132 (N.D. Cal.

2 2012). Plaintiffs filed the Complaint naming Professor Link in February 2025, after

3 issuing a litigation hold the previous November. UC still erased his computer in May

4 2025.

5 Local Rule 251 does not bar relief. That rule governs ordinary discovery disputes, not

6 spoliation. Spoliation destroys the very evidence discovery would seek. Plaintiffs

7 nonetheless attempted in good faith to repeatedly inform UC Counsel that Prof Link lost

8 his data, and requested sworn affidavits from UC ITS personnel multiple times. UC

9 Counsel offered only unsworn denials. (Exhibit 2 at 7).

10 If UC's "prematurity" theory were accepted, any defendant could erase evidence early

11 and then hide behind Rule 26 scheduling — a result Rule 37(e) was designed to

12 prevent.

### 13 III. PROFESSOR LINK'S TESTIMONY AND DATA ARE RELEVANT

14 UC insists Professor Link's materials are irrelevant because he is retired and not tied to

15 a specific admissions cycle. That is legally incorrect.

16 At the pleading stage, Plaintiffs must only make their claims plausible. *Bell Atl. Corp. v.*

17 *Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts

18 may consider broader evidence of patterns and practices. Under *Arlington Heights v.*

19 *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977), intent may be shown through

20 historical background, the sequence of events, and departures from normal procedure.

1 Professor Link's records fall squarely within this framework. His affidavit confirms the
2 destroyed data included graduate admissions and faculty recruitment records —
3 evidence probative of UC's systemic use of race. Under Fed. R. Evid. 401, such
4 evidence is relevant if it makes Plaintiffs' claims more probable. Evidence that UC
5 applied race-based criteria in faculty hiring makes it more probable that UC applied
6 similar criteria in admissions — the very claim at issue here. UC cannot destroy it and
7 then argue it is immaterial.

8 UC's claim that Plaintiffs have not identified what the lost data would show is
9 disingenuous. From the very first Complaint, Plaintiffs alleged that, after refusing to
10 consider race in faculty hiring, Professor Link faced a year-long persecution by senior
11 UC administrators, and he had agreed to testify about UC's use of race. His data can
12 uniquely demonstrate what he faced and was put through, revealing how UC enforces
13 and operationalizes its race-conscious decision-making. That alone made his records
14 highly probative. His affidavit now confirms that the destroyed computer contained
15 admissions and recruitment data, which would at minimum shed light on UC's
16 admissions and hiring practices, and their racial dimensions. Plaintiffs have therefore
17 not only pled but now demonstrated with sworn testimony what the lost materials were
18 likely to show. UC's assertion that Plaintiffs do not "provide any information about…what
19 the data purport to show" is contradicted by both the pleadings and the record.

## 20 IV. UC CANNOT DECLARE RELEVANCE OR USURP THE JURY

1 Relevance is for the Court — and ultimately the jury — to decide. Plaintiffs demanded a

2 jury trial. UC's claim that "a trier of fact could not find otherwise" usurps that role. A

3 litigant cannot erase evidence and then declare it irrelevant.

4 UC's insistence that Professor Link's data "is not relevant" mirrors the argument rejected

5 in *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991), where the Ninth Circuit

6 warned that a party cannot destroy evidence and then benefit from its absence. Rule

7 37(e) exists precisely to prevent such unilateral nullification of a jury's role.

## 8 V. UC'S CONTRADICTORY POSITIONS

9 UC argues Plaintiffs are not prejudiced because equivalent evidence could be obtained

10 "through discovery." Yet UC simultaneously seeks dismissal to block discovery entirely.

11 Both positions cannot be true. If UC's motion to dismiss were granted, Plaintiffs would

12 never have the opportunity to seek alternative sources, and the spoliation of Professor

13 Link's data would remain absolute. UC's contradictions further demonstrate why

14 sanctions are necessary now.

## 15 VI. PREJUDICE AND INTENT

### 16 A. Cotton

17 UC cites *Cotton v. Medina*, 2025 WL 1707232 (E.D. Cal. June 18, 2025), to argue there

18 is no evidence of intent because no one reviewed Professor Link's files. But direct

19 evidence of review is not required. Rule 37(e)(2) permits intent to be inferred from

20 circumstantial evidence. Here, UC erased a named witness's computer under a

21 litigation hold, then falsely denied it. That sequence permits an inference of intent.

## 1 B. Hernandez

2 UC also cites *Hernandez v. Tulare County Corr. Ctr.*, 2018 WL 784287 (E.D. Cal. Feb.
3 8, 2018), where sanctions were denied because the missing jail video would not have
4 captured the relevant incident, and the plaintiff could obtain equivalent testimony from
5 witnesses. The opposite is true here. Professor Link's affidavit confirms the destroyed
6 files contained admissions and recruitment records. The loss is irreplaceable because,
7 even if fragments of the data could be reconstructed from other sources, there is no way
8 to ensure that the recovery is complete. Without the original files, Plaintiffs cannot know
9 what admissions or hiring records were omitted, altered, or lost. This uncertainty itself is
10 prejudicial and underscores why preservation duties are critical: once data is destroyed,
11 no substitute can provide assurance that the evidentiary record is whole.

## 12 C. Gregory

13 UC's reliance on *Gregory v. State of Montana*, 118 F.4th 1069 (9th Cir. 2024), is also
14 misplaced. In *Gregory*, the State acted "recklessly" by allowing video to be auto-deleted;
15 recklessness alone was insufficient under Rule 37(e)(2). Here, UC went much further: it
16 physically entered a witness's office, removed his computer weeks before his authorized
17 deadline, wiped the drive, and falsely insisted that "no data were deleted." That is
18 purposeful destruction, beyond recklessness.

19 Rule 37(e)(1) authorizes remedial measures even absent intent. And unlike in *Gregory*,
20 the facts here support a reasonable inference of intent under Rule 37(e)(2): UC knew
21 the data were relevant, erased them anyway, and continues to deny it.

1 **D. Apple v. Samsung**

2 This is exactly the type of case where courts impose adverse inferences. In *Apple Inc.*

3 *v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976 (N.D. Cal. 2012), the court imposed an

4 adverse inference after Samsung failed to suspend its auto-deletion system under a

5 litigation hold. Although *Apple* predates the 2015 Rule 37(e) amendments, its reasoning

6 remains instructive: erasing ESI subject to a hold supports an inference of intent to

7 deprive. Post-*Gregory*, the analysis falls under Rule 37(e)(2), but the result is the same.

8 **VII. FORENSIC ANALYSIS IS NECESSARY**

9 UC's denials are unsworn and contradictory. The only way to verify its claims is through

10 forensic examination of Professor Link's hard drive at UC's expense. Courts routinely

11 order spoliating parties to bear such costs. Without independent review, UC will

12 continue to deny what the evidence already shows. If UC is confident in its position that

13 "no data were deleted," forensic analysis will only confirm it. If not, the Court and

14 Plaintiffs deserve to know the truth.

15 **VIII. REQUESTED RELIEF**

16 Plaintiffs respectfully request that the Court grant the relief sought in Plaintiffs' Motion

17 for Sanctions (Dkt. 39). In light of UC's Opposition and the newly submitted affidavit of

18 Professor Perry Link, Plaintiffs specifically ask that the Court:

19    1. Accept Professor Link's affidavit and emails as **Exhibit 1**;

20    2. Order sworn affidavits from UC ITS personnel with related logs;

1    3. Compel production of Professor Link's hard drive for forensic analysis at UC's
2       expense;
3    4. Order UC to preserve and produce backups, mirrored servers, and recovery
4       records;
5    5. Hold an evidentiary hearing to resolve the factual conflict;
6    6. Authorize targeted discovery into Professor Link's data notwithstanding UC's
7       motion to dismiss; and
8    7. Impose sanctions under Rule 37(e)(2) in the form of an adverse inference
9       instruction. UC affirmatively erased a named witness's computer under a
10      litigation hold and continues to deny it. An adverse inference is not only
11      authorized but necessary to cure prejudice and deter further misconduct.

## CONCLUSION

13 UC erased the contents of a named witness's computer while under a litigation hold and
14 continues to deny it. Plaintiffs have provided sworn testimony and UC's own admissions
15 proving otherwise. This entrenched factual conflict requires urgent intervention. The
16 Court should impose sanctions, compel discovery, and grant the relief requested before
17 further evidence is lost.

18 This situation is urgent. Every day that passes decreases the already slim chance of
19 recovering Professor Link's data. Plaintiffs acted immediately after learning of his loss
20 because the risk of further destruction is too great to wait. UC's conduct has already
21 caused irreparable harm — not only to this litigation, but to a distinguished scholar
22 whose career's worth of work was erased without notice. The Court's prompt

1 intervention is necessary to prevent further spoliation and to ensure that UC does not

2 benefit from its misconduct.

3 Plaintiffs recognize that raising this motion now, while in the process of retaining

4 counsel, may complicate case management. But the stakes are too high to delay.

5 Professor Link's lost files represent decades of scholarship deeply valued by the

6 Chinese community — including Plaintiffs themselves. Plaintiffs cannot tolerate further

7 inaction while UC continues to deny responsibility. Immediate Court action is warranted.

8

9 Dated: September 14, 2025

10 Respectfully submitted,

11 **/s/ Nan Zhong**

12  Nan Zhong, Pro Se Plaintiff

1  NAN ZHONG (Plaintiff *pro se*)
2  211 Hope St. #390755
3  Mountain View, CA 94039
4  Telephone: 425-698-9139
5  nanzhong1@gmail.com
6

7          UNITED STATES DISTRICT COURT

8      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

|  |  |
|---|---|
| **Stanley Zhong, et al.** | |
| Plaintiffs, | Case No. 2:25-cv-00495-DAD-CSK |
| v. | |
| **The Regents of the University of California, et al.** | Date: October 7, 2025<br>Time: 10:00 am<br>Place: Courtroom 25 |
| Defendants. | Judge: Hon. Chi Soo Kim |

10        **NOTICE OF SUPPLEMENTAL EVIDENCE IN SUPPORT OF**

11        **PLAINTIFFS' MOTION FOR SANCTIONS**

12 Plaintiffs respectfully submit this Notice of Supplemental Evidence in support of their

13 Motion for Sanctions (Dkt. 39) and Reply.

14 Since the filing of the Motion, Plaintiffs have obtained new evidence directly relevant to

15 the issues raised. Attached are:

1    • **Exhibit 1** – Affidavit of Professor Eugene Perry Link, Jr., sworn under penalty of

2      perjury, describing the removal and erasure of his UC Riverside office computer

3      and the loss of admissions and hiring data.

4        ○ **Exhibit 1-A** – Contemporaneous email correspondence between

5          Professor Link and his department chair regarding the removal and

6          deletion of the computer.

7    • **Exhibit 2** – Email chain between Plaintiffs and UC counsel dated August

8      24–September 12, 2025, in which UC's counsel asserted that "Mr. Link's desktop

9      computer was never removed, and data were never deleted," and stonewalled

10     Plaintiffs' request for sworn ITS declarations.

11   • **Exhibit 3** – Declaration of Plaintiff Nan Zhong authenticating Exhibits 1–2.

12   These materials provide sworn testimony and contemporaneous records directly

13   rebutting UC's assertion that Professor Link's computer was never removed and no data

14   were deleted. Plaintiffs rely on this supplemental evidence in support of their Motion for

15   Sanctions.

16   Respectfully submitted,

17   Dated: September 14, 2025

18   /s/ Nan Zhong

19   Nan Zhong

20   Pro Se Plaintiff

1            **Exhibit 1**

2        **Professor Perry Link's sworn affidavit**

3

# Affidavit by Perry Link

## I. Affiant Identification & Introduction

1. **Full Legal Name:** Eugene Perry Link, Jr

2. **Contact Information:**
   a. Address: █████████████████
   b. Phone number: ███████████
   c. Email: perry.link@ucr.edu

## II. Background and Basis of Knowledge

3. **Relationship to the University of California ("UC"):**
   a. Distinguished Professor, Comparative Literature, UC Riverside ("UCR")
   b. Chancellorial Chair for Teaching Across Disciplines, UC Riverside

## III. Specific Factual Allegations

4. This affidavit details my account of the events leading to and after the removal from my UCR office in May 2025 of personal files, the computer I was using, and decades of data that were on the hard disk of the computer.

I, Perry Link, declare as follows:

5. I am over the age of 18 and competent to testify to the matters set forth herein. I make this declaration based on my personal knowledge.

6. I retired from the University of California, Riverside in 2024. My department chair, Jeffrey Sacks, in an October 18, 2024 email, authorized me to continue using my office, HMNSS 2504, until June 30, 2025.

7. In late April 2025, I purchased an external storage device and requested assistance from UC Riverside Information Technology Services ("ITS") to transfer data from my office desktop computer to that external storage device. David Kyle, an ITS technician, came to my office on May 6, 2025 and was able to transfer much of the data to the external drive. I was present in the office on that occasion.

8. I was *not* present in the office when, some time between May 6 and May 31, 2025, UCR staff entered the office and took away the computer, the external drive aforementioned, a printer, my office desk, and four file cabinets. This happened without any advance notice. I was shocked when I entered the office on May 31, 2025 and saw what had happened.

9. After I complained, two other ITS technicians, Kelvin Mac and Andrew Tran, working remotely, tried to help me recover data that might have been backed up "on the cloud." Both technicians were polite and sincere but made little progress.

10. At no point did I state, suggest, or confirm that data transfer from the desktop was "correct and complete."

11. The desktop computer contained the entirety of my digital records, data, and scholarly work dating back to the late 1980s, when I was teaching at UCLA and extending through my years at Princeton University (1989-2008), and UC Riverside (2008-2024).

12. The records included email and other documents that pertained to graduate student admission and to faculty recruitment.

13. The file cabinets removed contained a career's worth of materials, including research notes, "ideas" notes, hand-written correspondence with distinguished Chinese writers, and photographs. This material is of immense professional and personal value, not least because I am currently writing my memoirs.

14. On May 31, 2025, I emailed Chair Sacks to report the unauthorized removal and request the immediate return of my files and other personal property.

15. On June 17, 2025, I was sent three boxes at the chair's instruction. One box was nearly empty, another contained files approximately half of which were not mine, and the third contained files all of which were mine. The returned items were only a fraction of what had been in the four file cabinets.

16. On June 18, 2025, Chair Sacks informed me via email that although my computer had been "retrieved," its memory had already been deleted pursuant to "standard procedure" and that UC had contracted with an outside vendor to attempt data recovery.

17. At no point did Chair Sacks or anyone in the administration express regret for the major loss I had suffered. The chief of the ITS technicians did write in a message on August 13, 2025 that "I'm very sorry for the situation you are in." But there has been no empathy from the administration.

18. On or about July 29, 2025, ITS reported to my department chair that the professional recovery service with whom they had contracted "indicated no data could be recovered."

## IV. Conclusion

19. **Reaffirmation:** Under penalty of perjury, I affirm that the statements above are true and correct to the best of my knowledge and belief.

## V. Signature and Notarization

### 20. Signature of the Affiant

*Z, Ray Lindf*

### 21. Date of Signature

September 2, 2025, (09/02/2025)

### 22. Notary Public Section

Notary Certificate
Attached

# Exhibit A

Perry Link's email exchanges regarding file and data loss

October 18, 2024, and email from my department chair Jeffrey Sacks:

A note to share is: in my role as Chair, I believe it would be fine, Perry, for you to maintain use of your office until 06/30/2025.

We will need to assign the office for other faculty beginning 7/01/25.

Wishing everyone a lovely weekend,

Jeff

---

May 31, 2025  email from me to my chair

Chair Sacks:

Relying on your email of 10/18/24 (see below), I have been gradually removing my belongings from HMNSS 2504 and was about 2/3 finished, knowing I could easily finish by your 6/30/25 deadline.

I was startled to enter the office this afternoon to find that the desk, the computer, and all of the file cabinets had been removed--contents and all. There were three plastic containers in the office filled with various things, but those things were not mine.

I ask that you arrange for the return of my files and other personal property as soon as possible. If they have been lost or destroyed we will be facing a very, very substantial issue.

Perry Link

---

June 18, 2025, from chair Sacks to me:

Hi Perry,

I hope that all is well.

Thanks so much for your patience.

I've been informed that your computer has been retrieved, and yet it seems that, following the standard procedure, the memory in it was deleted.

Brandy has been in touch with CHASS IT and IT is contracting with a third party (a computer diagnostic company) to see if the memory can be restored.

I've been informed that they will try their best to restore the data, but that it may not recoverable, or may only be partially recoverable.

The time frame is 7-10 business days.

I'll let you know when I learn anything more,

With all best wishes,

Jeff

---

July 6, email from me to chair Sacks about the return of some paper files

Chair Sacks,

Returning from 10 days in Asia, I opened the three boxes that you sent to me by Fedex.

One box was almost empty. It contained only some notepads and a number of Inter-office envelops.

Two boxes were filled with files, but some of the files were not mine. This afternoon I left the files that are not mine on the table in the departmental library.

Many of my files are still missing. When I left 2504 there was one entire file cabinet (four drawers) that I not yet sifted for taking home, and another cabinet that I had nearly finished with, but not quite. The 1 1/2 boxes of content that you sent to me are only a part of what was in those cabinets when you had the office cleaned out.

I await your report on whether you were able to recover any of the data on the university computer that I was using. The data there were not just from my years at UCR. They also included everything that I had transferred from my office computer at Princeton.

Perry Link

---

July 29, 2025 from UCR's IT service to my chair Jeffrey Sacks

Hi Jeffrey,

We sent the disk from Perry's computer to a profession recovery service and they indicated no data could be recovered.

Later, Kelvin worked with Perry to access his Google drive (cloud) to see if any files were saved. My understanding is that a backup folder with email was located but the condition of the files or how to use them was unknown. Detailed instructions were provided to Perry on how he can give us (CHASS IT) access to that folder so we can analyze and determine the next course of action. As of now, we are still waiting for that access to be provided to us.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

┌─────────────────────────────────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the │
│ document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────────────────────────────────┘

State of California                )

County of __Riverside__ )

On _September 2, 2025_ before me, __Himal Bista, Notary Public__ ,
      *Date*                          *Here Insert Name and Title of the Officer*

personally appeared __Eugene Perry Link Jr.__
                                       *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                     *Signature of Notary Public*

**HIMAL BISTA**
**COMM. #2480558**
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires Jan. 30, 2028

     *Place Notary Seal Above*

──────────────────── **OPTIONAL** ────────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __Affidavit__
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

1

# Exhibit 2

2

# Email Exchanges with UC Counsel

3

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's

2 Computer

3 From: Nan Zhong <nanzhong1@gmail.com>

4 Sun, Aug 24, 2025 at 11:59 AM

5 To: "Crafts, Michael" <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"

6 <debo.adegbile@wilmerhale.com>, "Ellsworth, Felicia H"

7 <felicia.ellsworth@wilmerhale.com>, "Tsai, Denise" <denise.tsai@wilmerhale.com>,

8 "Hogue, Sharon Kelleher" <sharon.hogue@wilmerhale.com>, "Vittor, Joshua"

9 <joshua.vittor@wilmerhale.com>

10

11 Dear UC Counsel,

12 Plaintiffs have learned that, notwithstanding the litigation hold and our express

13 reference to Professor Perry Link in the complaint, UC staff nevertheless entered his

14 office in May 2025, removed his UC-owned desktop computer, and erased its contents

15 in direct violation of UC's preservation obligations. This action was taken without

16 Professor Link's knowledge, presence, or consent. UC had previously promised

17 Professor Link that he could retain his office, and thus access to the computer, until July

18 2025.

19 The erased desktop contained faculty hiring and admissions data directly relevant to

20 this litigation. Ownership of the machine is irrelevant: because UC had custody and

1 control of the computer, its contents were squarely within UC's preservation obligations.

2 By erasing it ahead of schedule and without notice, UC engaged in spoliation of

3 evidence.

4 Please immediately confirm:

5  • Who authorized or carried out this removal and erasure;

6  • Whether any forensic images, backups, or mirrored server copies exist; and

7  • What remedial steps UC will take to preserve and produce this destroyed

8    evidence.

9 Plaintiffs demand that UC immediately preserve all related backups, IT logs, metadata,

10 and any other associated records. We are evaluating remedies under Federal Rule of

11 Civil Procedure 37(e), including sanctions, adverse inference instructions, preclusion

12 orders, and cost-shifting.

13 Please respond within 48 hours with a full explanation.

14 Sincerely,

15 Nan Zhong

16 Plaintiff Pro Se

17

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's

2 Computer

3 From: Hogue, Sharon Kelleher <Sharon.Hogue@wilmerhale.com>

4 Mon, Aug 25, 2025 at 5:14 PM

5 To: Nan Zhong <nanzhong1@gmail.com>, "Crafts, Michael"

6 <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"

7 <Debo.Adegbile@wilmerhale.com>, "Ellsworth, Felicia H"

8 <Felicia.Ellsworth@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>,

9 "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

10 Thanks, Nan.  We are looking into this and will respond when we have more information

11 to share.

12

13 Best,

14 Sharon

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's

2 Computer

3 From: Nan Zhong <nanzhong1@gmail.com>

4 Mon, Aug 25, 2025 at 6:01 PM

5 To: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>

6 Cc: "Crafts, Michael" <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"

7 <Debo.Adegbile@wilmerhale.com>, "Ellsworth, Felicia H"

8 <Felicia.Ellsworth@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>,

9 "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

10 Thank you.

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's
2 Computer

3 From: Nan Zhong <nanzhong1@gmail.com>    Tue, Aug 26, 2025 at 12:18 PM

4 To: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>

5 Cc: "Crafts, Michael" <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"
6 <Debo.Adegbile@wilmerhale.com>, "Ellsworth, Felicia H"
7 <Felicia.Ellsworth@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>,
8 "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

9 Dear UC Counsel,

10 This email follows up on your response yesterday regarding the destruction of evidence
11 on Professor Perry Link's desktop computer.

12 As you know, our email of August 24 requested a full explanation within 48 hours. That
13 deadline has now expired. Your response, which lacked any substantive information, is
14 inadequate given the gravity of the situation.

15 Because UC has failed to provide a timely or meaningful explanation for its spoliation of
16 evidence, we are left with no alternative but to seek relief from the court. We are
17 therefore preparing a Motion for Sanctions pursuant to Federal Rule of Civil Procedure
18 37(e), which we intend to file imminently.

19 Sincerely,

20 Nan Zhong

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's

2 Computer

3 From: Ellsworth, Felicia H <Felicia.Ellsworth@wilmerhale.com>

4 Tue, Aug 26, 2025 at 4:10 PM

5 To: Nan Zhong <nanzhong1@gmail.com>

6 Nan,

7 As previously indicated, we have been working diligently to understand the actual facts

8 underlying the serious accusations levied in your email from Sunday.  Please note that

9 UC does not concede that Mr. Link is himself relevant or would have been in possession

10 of any documents relevant to your claims.

11 In short, your accusations appear to be factually incorrect.  As far as UC Riverside

12 Information Technology Services ("ITS") is aware, Mr. Link's desktop computer **was**

13 **never removed**, and **data were never deleted**. *(Plaintiffs' note: emphasis added)* In or

14 around April 2025, Mr. Link requested assistance from UC Riverside ITS to transfer data

15 from his desktop to an external drive to his personal laptop.  ITS assisted Mr. Link with

16 that request after he purchased an external storage device, Mr. Link was present for the

17 entirety of the transfer process, and Mr. Link confirmed that everything seemed correct

18 and complete after the transfer was done.  **No equipment or otherwise was removed**

19 **from Mr. Link's office and no data were discarded, removed, trashed, deleted, or**

20 **altered**. *(Plaintiffs' note: emphasis added)*

1 Thus, any motion would be unfounded, and we reserve all rights.

2 Thank you,

3 Felicia

Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's Computer

From: Nan Zhong <nanzhong1@gmail.com>

Tue, Aug 26, 2025 at 11:37 PM

To: "Ellsworth, Felicia H" <Felicia.Ellsworth@wilmerhale.com>

Cc: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>, "Crafts, Michael" <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo" <Debo.Adegbile@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>, "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

Hi Felicia,

Thank you for your email. Since your account of the events is sharply at odds with Professor Link's, please provide sworn affidavits or declarations from the ITS personnel who allegedly performed the transfer, including details of the date, equipment used, and any confirmation received from Professor Link.

As you know, unsworn representations by counsel do not resolve factual disputes; sworn testimony will be necessary for the Court to evaluate this matter.

Sincerely,

Nan Zhong

Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's Computer

From: Nan Zhong <nanzhong1@gmail.com>

Tue, Aug 26, 2025 at 11:46 PM

To: "Ellsworth, Felicia H" <Felicia.Ellsworth@wilmerhale.com>

Cc: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>, "Crafts, Michael" <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo" <Debo.Adegbile@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>, "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

Please also note that our Motion for Sanctions was mailed to the Court earlier today, before receipt of your email. In light of the conflicting accounts now on record, we intend to supplement the motion with additional sworn declarations so the Court can evaluate the matter.

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's

2 Computer

3 From: Nan Zhong <nanzhong1@gmail.com>

4 Wed, Sep 3, 2025 at 8:58 AM

5 To: "Ellsworth, Felicia H" <Felicia.Ellsworth@wilmerhale.com>

6 Cc: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>, "Crafts, Michael"

7 <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"

8 <Debo.Adegbile@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>,

9 "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

10 Hi Felicia,

11 I am following up on my August 26 request. As of today, Professor Link still does not

12 have his computer data returned to him. UC has already confirmed that the contents of

13 his desktop hard disk were erased and that recovery attempts were unsuccessful. This

14 is in direct conflict with your August 26 email, which asserted that his desktop was never

15 removed and no data were deleted.

16 Unsworn correspondence cannot resolve such a direct factual conflict. This dispute

17 underscores the urgent need for the Court's action on Plaintiffs' pending Motion for

18 Sanctions. Please provide sworn affidavits from the UC staff who entered Professor

19 Link's office in May, together with related logs, work orders, and records, so that the

20 Court can evaluate the matter properly.

1 If UC does not produce sworn affidavit, we will so inform the Court in connection with

2 our motion.

3

4 Sincerely,

5 Nan Zhong

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's

2 Computer

3 From: Ellsworth, Felicia H <Felicia.Ellsworth@wilmerhale.com>

4 Fri, Sep 5, 2025 at 5:17 AM

5 To: Nan Zhong <nanzhong1@gmail.com>

6 Cc: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>, "Crafts, Michael"

7 <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"

8 <Debo.Adegbile@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>,

9 "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

10 Nan,

11 We will respond to your already pending motion under the schedule set by the federal

12 rules.

13 Felicia

1 Subject: [URGENT] Zhong v. UC - Spoliation of Evidence – Professor Perry Link's
2 Computer

3 From: Nan Zhong <nanzhong1@gmail.com>

4 Fri, Sep 12, 2025 at 10:16 PM

5 To: "Ellsworth, Felicia H" <Felicia.Ellsworth@wilmerhale.com>

6 Cc: "Hogue, Sharon Kelleher" <Sharon.Hogue@wilmerhale.com>, "Crafts, Michael"
7 <Michael.Crafts@wilmerhale.com>, "Adegbile, Debo"
8 <Debo.Adegbile@wilmerhale.com>, "Tsai, Denise" <Denise.Tsai@wilmerhale.com>,
9 "Vittor, Joshua" <Joshua.Vittor@wilmerhale.com>

10 Hi Felicia,

11 Yesterday we received, and today we digitized, the attached sworn affidavit of Professor
12 Perry Link. The affidavit directly rebuts your assertion that his computer "was never
13 removed" and "no data were deleted."

14 We will be filing this affidavit as supplemental evidence with the Court. If UC intends to
15 provide sworn declarations from its ITS personnel, please do so promptly.

16 Sincerely,

17 Nan Zhong

1      **Exhibit 3**

2   **DECLARATION OF NAN ZHONG IN SUPPORT OF REPLY AND**

3                      **EXHIBITS**

4  I, Nan Zhong, declare:

5      1.  I am a Plaintiff in this action. I have personal knowledge of the facts stated

6          herein.

7      2.  Attached as Exhibit 2 is a true and correct copy of an email chain between me

8          and counsel for Defendants, which I either sent or received at or near the times

9          indicated in the messages in the ordinary course of this litigation.

10     3.  The emails include (a) Defendants' counsel's statements that Professor Link's

11         desktop computer "was never removed" and "no data were discarded, removed,

12         trashed, deleted, or altered," and (b) Plaintiffs' requests for sworn declarations

13         from UC ITS personnel regarding the handling of Professor Link's computer and

14         data.

15  I declare under penalty of perjury under the laws of the United States that the foregoing

16  is true and correct to the best of my knowledge.

17

18  Executed on September 14, 2025, in Mountain View, CA.

19  /s/ Nan Zhong

20  Nan Zhong

1  NAN ZHONG (Plaintiff *pro se*)
2  211 Hope St. #390755
3  Mountain View, CA 94039
4  Telephone: 425-698-9139
5  nanzhong1@gmail.com
6

7            UNITED STATES DISTRICT COURT

8        FOR THE EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| **Stanley Zhong, et al.** | |
| Plaintiffs, | Case No. 2:25-cv-00495-DAD-CSK |
| v. | |
| **The Regents of the University of California, et al.** | Judge: Hon. Chi Soo Kim |
| Defendants. | |

10      **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR**

11                        **SANCTIONS**

12 The Court has considered Plaintiffs' Motion for Sanctions (Dkt. 39), Plaintiffs' Reply, and

13 the supplemental evidence dated September 14, 2025. Having reviewed the record, the

14 Court finds that Defendants failed to preserve electronically stored information in

15 violation of their preservation obligations.

16 IT IS HEREBY ORDERED THAT:

1. Plaintiffs' supplemental evidence, including the Affidavit of Professor Perry Link and attached exhibits, is accepted into the record.

2. Defendants shall produce sworn declarations from UC Riverside ITS personnel involved in handling Professor Link's computer, including logs, work orders, and authorizations.

3. Defendants shall produce the hard drive from Professor Link's computer for independent forensic analysis at Defendants' expense.

4. Defendants shall preserve and produce any backups, mirrored servers, or recovery records related to Professor Link's data.

5. An evidentiary hearing will be scheduled to resolve the factual conflict concerning the destruction of Professor Link's computer and data.

6. Plaintiffs are authorized to conduct targeted discovery concerning Professor Link's computer, data, and related records notwithstanding Defendants' anticipated motion to dismiss.

7. Pursuant to Fed. R. Civ. P. 37(e)(2), the Court will instruct the jury that it may draw an adverse inference that the destroyed data would have been unfavorable to Defendants.

IT IS SO ORDERED.

Dated: _____, 2025

Hon. Chi Soo Kim